## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSIAH CAYENNE,** | : | **CIV NO. 3:23-CV-1543** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **TOBYHANNA TOWNSHIP, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.     Introduction

In this case, which comes before us for consideration of various motions to dismiss, we are called upon to write the latest chapters in a legal saga which has spanned the past five years. This saga arises out of what is alleged to have been a sexually and racially charged episode at a local high school. When this saga began in 2019, the plaintiff, Josiah Cayenne was a student at the Mount Pocono West High School. (Doc. 19, ¶ 3). On May 9, 2019, a fellow student at the high school reported to school officials that Cayenne had sexually assaulted her on a school activity bus.

This reported sexual assault led to an inquiry by school officials. That inquiry, in turn, inspired a referral to local law enforcement who engaged in a criminal investigation. This investigation culminated in the filing of charges against Cayenne

1

in August of 2019. Following protracted criminal proceedings, in July and August of 2021 Cayenne entered a guilty plea to corruption of minors and was sentenced to one year's probation. Cayenne appealed this guilty plea conviction and, in November of 2022, the Pennsylvania Superior Court vacated Cayenne's conviction, setting the stage for the instant lawsuit.

In his amended complaint, Cayenne lodges nine separate claims of false arrest, malicious prosecution, and various federal civil rights violations against two institutional defendants and three individual defendants. (Doc. 19). Thus, the gravamen of Cayenne's amended complaint is his allegation that he was subjected to a meritless, malicious criminal prosecution and a false arrest. With his complaint focused upon what Cayenne alleged was a miscarriage of the criminal justice system, notably one of the individual defendants named by Cayenne in the amended complaint, Dean Nick Morrell, is an academician and not a law enforcement officer. Dean Morrell has now moved to dismiss Cayenne's complaint arguing that Cayenne cannot maintain false arrest and malicious prosecution claims against a school official who has no criminal law enforcement responsibilities. (Doc. 22). This motion is fully briefed and is, therefore, ripe for resolution.

For the reason set forth this motion will be granted.

## II.    **Factual Background and Procedural History**

With respect to Dean Morrell, the well-pleaded facts, which guide our resolution of this motion to dismiss, are set forth in Cayenne's amended complaint, (Doc. 19), which is the operative pleading in this case.[1]  That amended complaint recites the following essential facts:

In 2019, Cayenne was a student at the Mount Pocono West High School. (Doc. 19, ¶ 3). On May 9, 2019, a fellow student at the high school, identified by the pseudonym AA, reported to a school official, Dean Nick Morrell, that Cayenne had sexually assaulted her on a school activity bus the previous day. (Id., ¶¶ 21, 28-37). This report confronted school administrators with allegations of sexual violence which also had a potential racial subtext, since Cayenne was African American and his accuser, AA, was Caucasian.

Upon receiving this allegation, Dean Morrell then questioned Cayenne, who acknowledged that he had engaged in sexual contact with AA but claimed that the

---

[1] We note that Cayenne has twice moved to further amend his complaint but has done so in a fashion which did not comply with Local Rule 15.1. We have, therefore, denied these motions without prejudice to consideration of a motion which met the strictures of the local rule. To date Cayenne has not submitted a further, rules compliant, motion to amend. Accordingly, in the absence of any such motion, we will treat Cayenne's current amended complaint as the operative pleading in this case.

incident was consensual. (Id., ¶¶ 21, 22, 28-37). Dean Morrell also viewed the

pertinent school bus video which depicted Cayenne sitting next to AA with his arm

around her but did not otherwise disclose whether this contact was non-consensual.

After viewing this video, Dean Morrell referred this incident to the school public

safety officer, who conducted further investigation and interviews. (Id., ¶¶ 24, 25).

Specifically, the role of Dean Morrell in this matter was described by Cayenne

in the following terms:

21. On the morning of May 9, 2019, AA approached Defendant Dean
Morrell and reported that the Plaintiff molested her on the activity bus
the day before, touching her breast and vagina. After speaking with AA,
Defendant Morrell spoke to Plaintiff, who told him that he sat beside
AA on the activity bus and put his arm around her.

22. Plaintiff then stated that he asked AA if he could touch her breast
to which she responded yes, with a sexy look. Plaintiff then admitted
that he put his hands in AA's pants and asked her if that was ok, to
which she responded yes, at which time he inserted his finger into her
vagina.

23. After speaking with Plaintiff, Defendant Morrell reviewed the bus
video, which only depicted Josiah sitting, by the aisle on the outside
next to AA, with his arm around her. According to Defendant Morrell
the video did not depict any intimate contact.

*********************************************************

26. Defendant, Dr. Nick Morell, is the Dean of Students at Pocono
Mountain West High School. (N.T. Direct Examination of Dean Nick
Morell, Suppression Hearing, 6/12/2020, p. 11, lines 16-18).

27. Defendant Morell's duties as Dean of Students include conducting investigations, overseeing school surveillance, maintaining discipline on school buses, and general school safety issues. (N.T. Direct Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p.11, lines 19-25).

28. On May 9, 2019 Defendant Morell was directed by Dr. Mark Wade, the building principal at Mount Pocono High School to meet with a female student, who was concerned about something that happened to her at school. (N.T. Direct Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 12, lines 19-25, p. 13, line 1).

29. Defendant Morell met with and interviewed the student, who told him that the Plaintiff touched her unwantedly in her private areas. (N.T. Direct Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 13, lines 5-17).

30. Defendant Morell did not contact law enforcement, prior to interviewing the female student. (N.T. Direct Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 13, lines 2-4).

31. After getting the account of the female student, Defendant Morell called the classroom that Appellant was assigned to and requested that he come to Principal Brenda Flagler's Office, where he met Plaintiff with Assistant Principal Flagler. (N.T. Direct Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 14, lines 8-19).

32. As with the female complainant, Defendant Morell did not contact law enforcement prior to speaking with Plaintiff, and no law enforcement were present when he spoke to Plaintiff. (N.T. Direct Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 13, lines 18-20, p. 17, lines 4-6).

33. According to Defendant Morell, the investigation policy of Mount Pocono West High School, is that he contacts law enforcement only after a determination that a crime has been committed or possibly committed. (N.T. Cross Examination of Dean Nick Morell,

Suppression Hearing, 6/12/2020, p. 26, lines 21-25).

34. Defendant Morell asked Plaintiff what happened to which Plaintiff responded by giving a forthcoming personal narrative as to what happened. (N.T. Direct Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 17, lines 14-21).

35. When Defendant Morell finished interviewing Plaintiff, he asked Plaintiff to provide a written account of the incident. (N.T. Direct Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 17, lines 22-25).

36. Plaintiff complied by giving Defendant Morell a written statement, which was signed by both Plaintiff and Dr. Morell, who reviewed the document together. (N.T. Direct Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 18, lines 1-7). (Written Statement of Plaintiff, attached hereto and marked Exhibit "B").

37. After receiving the statement from Plaintiff, Defendant Morell determined that Plaintiff had possibly committed a crime then contacted Officer Wiley and alerted him as to what he discovered through the course of his investigation. (N.T. Direct Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 20, lines 15-20).

38. Defendant Morell did not contact either of Plaintiff's parents until after the conclusion of his investigation, because in his words that was consistent with "school policy." (N.T. Cross Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 26, lines 6-11).

39. Defendant Morell did not Mirandize Plaintiff prior to interviewing him and taking his written statement, because he did not feel that he was under an obligation to do so. (N.T. Cross Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 29, lines 11-25, p. 30, line 1).

40. Defendant Morell did not advise Plaintiff that he may be criminally prosecute [sic], until the conclusion of Plaintiff's interview, when he

showed Plaintiff a "major behavioral referral form," which indicated that School Resource Officer Wile would be involved. (N.T. Cross Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 33, lines 18-25, p. 34, lines 1-6).

41.Defendant Morell eventually shared the findings of his investigation with Officer Wile, but did not make Plaintiff available for an interview by Officer Wiley. (N.T. Cross Examination of Dean Nick Morell, Suppression Hearing, 6/12/2020, p. 33, lines 13-22).

(Id., ¶¶ 21-23, 26-41).

Thus, Cayenne's amended complaint simply alleges that Dean Morrell conducted a school disciplinary inquiry into an allegation of sexual misconduct by a high school student, and then turned the results of that inquiry over to law enforcement officials. The amended complaint further alleges that Dean Morrell viewed a school bus video that did not depict any intimate contact but failed to retain a copy of this video. Notably, the amended complaint alleges that Dean Morrell engaged in the school misconduct inquiry prior to contacting law enforcement. Thus, the chronology of events set forth in the amended complaint rebuts any suggestion that Morrell was acting as an agent of law enforcement or at the behest of law enforcement since this pleading affirmatively states that Morrell only contacted the authorities after he completed this inquiry.

The results of this inquiry were then turned over to Detective John Bohrmann and, in August of 2019, Cayenne was charged with indecent assault and open

lewdness. (Id., ¶ 13). Following protracted proceedings in which Cayenne unsuccessfully sought to suppress the statements which he had made to school officials, on July 7, 2021, Cayenne pleaded guilty to corruption of a minor in return for the dismissal of the remaining charged lodged against him. On August 19, 2021, Cayenne was sentenced to one year's probation following this guilty plea conviction. (Id., ¶¶ 13-15).

Cayenne appealed this conviction, and on November 17, 2022, the Pennsylvania Superior Court set aside his conviction holding that, under Pennsylvania law, one minor could not be convicted of corruption of the morals of another minor of comparable age. (Id., ¶¶ 17-20). Following this appeal, state authorities elected not to pursue any further criminal prosecution in this case.

It is against this backdrop that Cayenne has now filed this civil rights lawsuit. In his amended complaint Cayenne names three individual defendants: Dean Morrell, Detective Bohrmann, and Detective Bohrmann's supervisor, Chief of Police Chris Wagner. (Id.) Cayenne brings eight counts against these individual defendants, including federal civil rights claims grounded upon allegations of racially motivated bias, false arrest, and malicious prosecution, as well as state common law torts of fraudulent concealment, false arrest, and intentional infliction of emotional distress. (Id., Counts I-II, and V-IX).

With respect to Defendant Morrell, the school administrator, Cayenne levels four claims: First, Cayenne asserts that Morrell violated his constitutional rights by failing to advise him of his <u>Miranda</u> rights prior to his interview with Cayenne. (<u>Id.</u>, Count V). Second, Cayenne alleges that Morrell, a school administrator, fraudulently concealed exculpatory evidence in violation of the constitution when he failed to retain the school bus video, which it was conceded did not shed any light on the nature of the sexual contact between Cayenne and AA. (<u>Id.</u>, Count VI). Third, Cayenne brings federal civil rights claims against Dean Morrell which, while somewhat ambiguous, seem cast in terms of racially motivated animus by Morrell in the course of this state criminal case. (<u>Id.</u>, Count VII). Finally, the amended complaint charges Dean Morrell and Detective Bohrman with the state common law tort of intentional infliction of emotional distress arising out of this criminal investigation and prosecution. (<u>Id.</u>, Count VIII). Thus, as to Dean Morrell, Cayenne's claims share a common premise: all of these claims seek to attribute a legally culpable role to this school official as a result of the criminal proceedings that were later brought by law enforcement against the plaintiff.

With Cayenne's claims framed in this fashion, Dean Morrell has moved to dismiss the amended complaint, arguing that Cayenne cannot maintain false arrest and malicious prosecution claims against a school official who has no criminal law

9

enforcement responsibilities. (Doc. 22). Upon consideration, we agree and will grant this motion to dismiss.

## III.   Discussion

### A. Motion to Dismiss – Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all

reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. V. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679.

According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

12

As the court of appeals has observed:

> The Supreme Court in <u>Twombly</u> set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

<u>Burch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011), <u>cert. denied</u>,

132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." <u>Iqbal</u>, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

<u>Santiago v. Warminster Twp.</u>, 629 F.3d 121, 130 (3d Cir. 2010) (quoting <u>Iqbal</u>, 129

S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint,

attached exhibits, and matters of public record. <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." <u>Pension Benefit Guar. Corp. v. White Consol. Indus.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." <u>Pryor v. Nat'l Collegiate Athletic Ass'n</u>, 288 F.3d 548, 560 (3d Cir. 2002); <u>see also</u> <u>U.S. Express Lines, Ltd. V. Higgins</u>, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record In determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel</u>, 20 F.3d 1250, 1261 (3d Cir. 1994).

> In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure, which defines what a complaint should say and provides that: A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court

already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

It is against these legal benchmarks that we assess the sufficiency of the institutional liability claims set forth in this amended complaint.

### B. <u>Cayenne's Claims Against Dean Morrell Fail as a Matter of Law.</u>

As we have noted, in this case Cayenne has sued a school official, Dean Morrell, advancing a series of legal claims that are seemingly premised upon the notion that Morrell, a school official, is civilly liable for alleged misconduct that led to his arrest and criminal prosecution by others. Thus, Cayenne invites us to hold Morrell accountable for failing to give him <u>Miranda</u> warnings; for allegedly failing to retain arguably exculpatory evidence; for participating in what Cayenne characterizes as a racially discriminatory criminal investigation and prosecution; and for intentionally inflicting emotional distress upon Cayenne through this alleged

misuse of the criminal justice system.

In our view, however, many of these claims suffer from a common legal deficiency: Morrell's actions as a school administrator which were not undertaken at the behest of law enforcement do not provide grounds for holding him legally accountable for the subsequent decisions, actions, steps, and missteps of law enforcement in Cayenne's criminal case. Therefore, these claims fail as a matter of law and should be dismissed.

### 1. <u>Cayenne May Not Maintain a Miranda Claim Against Morrell.</u>

At the outset, Cayenne asserts that Dean Morrell violated his constitutional rights when he failed to advise Cayenne of his <u>Miranda</u> rights prior to interviewing him about this sexual episode. However, as Cayenne acknowledges in his amended complaint, Morrell undertook this interview as part of a school misconduct inquiry and did not communicate with law enforcement until after he had concluded his inquiry. Therefore, it is apparent from the allegations in the amended complaint that Morrell cannot be seen as not acting as an agent of law enforcement when he engaged in this interview.

Given these facts, Cayenne's <u>Miranda</u> claim against Dean Morrell fundamentally misconstrues the reach of the <u>Miranda</u> doctrine in two very basic ways. To be sure, in <u>Miranda v. Arizona</u>, 384 U.S. 436, 442, 86 S. Ct. 1602, 1611,

16 L. Ed. 2d 694 (1966), the Supreme Court adopted a prophylactic rule in criminal cases which applied only in the context of custodial interrogation by law enforcement and required that criminal suspects be advised of their rights and waive those rights prior to questioning.

However, this rule, which was established in a criminal law enforcement context, by its terms only applies to law enforcement officials. Therefore, courts have generally rebuffed efforts to extend Miranda to school disciplinary inquiries like that undertaken by Dean Morrell, holding instead that:

> To establish that [school officials] were "acting in a police capacity", or as agents of law enforcement, and therefore bound by Miranda and its progeny, Plaintiff must sufficiently plead that the defendants acted as instruments' or agents of the state; to wit, that the police coerced, dominated, or directed the actions of the school officials. See Coolidge v. New Hampshire, 403 U.S. 443, 487, 489, 91 S.Ct. 2022, 2048, 29 L.Ed.2d 564, 595 (1971). However, if Defendants' questioning was for disciplinary purposes, and not law enforcement purposes, "under the federal constitution, students facing disciplinary action in public schools are not entitled to Miranda warnings." Brian A. ex. rel. Arthur A. v. Stroudsburg Area School Dist., 141 F.Supp.2d 502, 511 (M.D.Pa.2001) (quoting Jarmon v. Batory, 1994 WL 313063, *11 (E.D.Pa.1994)) (citing Salazar v. Luty, 761 F.Supp. 45, 47 (S.D.Tex.1991); Pollnow v. Glennon, 594 F.Supp. 220, 224 (S.D.N.Y.1984), aff'd, 757 F.2d 496 (2d Cir.1985); Boynton v. Casey, 543 F.Supp. 995, 997 & n. 4 (D.Me.1982)); see also, S.E v. Grant County Bd. of Educ., 544 F.3d 633, 641 (6th Cir.2008) (finding that where the assistant principal was not acting at the behest of law enforcement, law enforcement officers were not present, and the assistant principal's actions were reasonable under the circumstances,

he was not required to advise the student of her <u>Miranda</u> rights).

<u>K.A. ex rel. J.A. v. Abington Heights Sch. Dist.</u>, 28 F. Supp. 3d 356, 366 (M.D. Pa. 2014).

This limitation on the reach of <u>Miranda</u> is fatal in the instant case, since the well-pleaded facts in Cayenne's amended complaint reveal that Morrell had not communicated with law enforcement prior to speaking with the plaintiff and therefore could not have been acting at the direction of law enforcement when he interviewed Cayenne. Accordingly, this claim fails because it misapprehends the reach of <u>Miranda</u> and endeavors to extend the <u>Miranda</u> doctrine far beyond its criminal contours.

Moreover, and more fundamentally, this claim founders on an insurmountable legal obstacle. The United States Supreme Court has held that an alleged <u>Miranda</u> violation does not give rise to civil rights liability under 42 U.S.C. §1983. <u>Vega v. Tekoh</u>, 597 U.S. 134, 150, 142 S. Ct. 2095, 2106, 213 L. Ed. 2d 479 (2022). In light of the Supreme Court's holding, which refused to provide a civil remedy for alleged <u>Miranda</u> violations under §1983, Cayenne's <u>Miranda</u> claim simply fails and must be dismissed.

### 2.  **Cayenne May Not Hold A School Official Liable for a Brady Violation.**

In Count VI of his amended complaint Cayenne appears to endeavor to graft another rule of criminal procedure onto this school official. In this count of his amended complaint, Cayenne alleges that Dean Morrell is civilly liable for the loss and destruction of a school bus video which apparently did not depict the nature of the sexual contact between Cayenne and AA. Cayenne contends that this lost video was potentially exculpatory and the failure to Dean Morrell to maintain the video violated his rights.

Cast in this fashion, Cayenne's claim seems to implicate the <u>Brady</u> doctrine,[2] a rule of due process in criminal cases which imposes an affirmative obligation on prosecutors and police to retain and disclose exculpatory information to the defense. However, the scope of that obligation is carefully defined in ways which undermine Cayenne's assertions. Under <u>Brady</u>, prosecutors are required "to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." <u>United States v. Merlino</u>, 349 F.3d 144, 154 (3d Cir. 2003) (quoting <u>Kyles v. Whitley</u>, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)). But it is equally clear that <u>Brady</u> does not create a far reaching, global,

---

[2] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

and independent obligation upon all governmental agencies and officials, including those that are not directly involved in a criminal prosecution, to retain arguably exculpatory information. Rather, under <u>Brady</u>, "the prosecution is only obligated to disclose information known to others *acting on the government's behalf in a particular case*." <u>United States v. Pelullo</u>, 399 F.3d 197, 218 (3d Cir. 2005) (emphasis added).

In the instant case, the well-pleaded allegations in Cayenne's amended complaint simply do not support a claim that Dean Morrell, a school official, was acting on the government's behalf in the criminal prosecution of the plaintiff. Quite the contrary, the amended complaint alleges that Morrell's active involvement in this matter drew to a close before he first communicated with law enforcement. On these facts, it cannot be said that Morrell was so intimately involved in the criminal case that he should be deemed part of the prosecution team subject to <u>Brady</u>'s constitutional dictate that law enforcement retain and disclose arguably exculpatory evidence. In the absence of such a showing, this <u>Brady</u> violation claim fails.

### 3. <u>Morrell Did Not Violate Cayenne's Rights by Referring this Matter to Law Enforcement.</u>

Count VII of Cayenne's amended complaint lodges an additional federal civil rights claim against Dean Morrell. While the nature of this claim is somewhat

obscure, it appears that Cayenne alleges that Morrell violated his constitutional rights when he deemed AA's allegation of non-consensual sexual assault to be sufficiently credible to warrant referral to law enforcement.

To the extent that Cayenne seeks to hold Morrell liable for the act of referring this matter to law enforcement, this allegation fails to state a claim upon which relief may be granted. As a general rule, and subject to one narrow exception, it is well-settled that a non-law enforcement official who reports what is believed to be suspicious activity to the police cannot be held liable for false arrest if the police later, and improvidently, take a suspect into custody. In this setting liability for the false arrest resides solely with the arresting officers, and not with the person who merely referred the matter to the police. See generally, LAWRENCE J. MILLS, et al. v. GOLDEN NUGGET ATLANTIC CITY, LLC, et al. Additional Party Names: Carl Smallwood, Daniel Chun, Lance Moorhouse, Landry's LLC, Mark Devine, Michael Flory, Michael Nelson, Richard Wheeler, No. CV 19-19610, 2021 WL 3667076, at *5 (D.N.J. Aug. 18, 2021). The sole exception to this rule:

> [M]ay lie where a plaintiff can 'show that ... defendan[t] instigated his arrest, thereby making the police ... agents in accomplishing [defendant's] intent to confine the plaintiff.' " Weintraub v. Board of Educ. of City of New York, 423 F.Supp.2d 38, 45 (E.D.N.Y.2006) (quoting Carrington v. City of New York, 201 A.D.2d 525, 607 N.Y.S.2d 721 (2d Dep't 1999). Specifically, a false arrest claim exists when a non-officer instigates the arrest by providing knowingly false

information to police. <u>Weintraub</u>, 423 F.Supp.2d at 55–56. This theory of liability can support a claim not only under state tort law but also under § 1983, where the defendant, even if not a law enforcement officer, is acting under the color of state law.

<u>Chepilko v. City of New York</u>, No. 06-CV-5491 ARR LB, 2012 WL 398700, at *10 (E.D.N.Y. Feb. 6, 2012).

Count VII of Cayenne's amended complaint seemingly faults Dean Morrell for referring AA's grave allegation of sexual assault to law enforcement after his school disciplinary inquiry confirmed that Cayenne admitted groping AA, but revealed a stark conflict between AA and Cayenne regarding whether this contact was a non-consensual assault. On these facts, we find that Morrell acted properly in making this referral to law enforcement. Indeed, the course that Cayenne would invite Morrell and the court to follow would entail completely disregarding a claim of sexual assault merely because the alleged assailant insisted the contact was consensual. This would be an unacceptable degree of official indifference to a serious allegation, and we reject the notion that Dean Morrell acted inappropriately by alerting law enforcement to AA's allegation that she had been assaulted. Moreover, there is no well-pleaded allegation that Morrell falsified his report to law enforcement. Quite the contrary, it appears that Morrell's report accurately described the factual dispute between AA and Cayenne on the question of consent. Therefore,

Morrell's report to law enforcement regarding suspicious and potentially criminal activity by Cayenne, standing alone, simply cannot give rise federal civil rights liability.

### 4. **Morrell is Entitled to Qualified Immunity**

But even if Cayenne could state a colorable constitutional claim against Morrell on these facts, we believe that the defendant would be entitled to qualified immunity. The doctrine of qualified immunity protects government officials from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." Id. Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Sharp v. Johnson, 669 F.3d 144, 159 (3d Cir. 2012) (citing Pearson, 555 U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest

possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. Giles v. Kearney, 571 F.3d 318, 325-26 (3d Cir. 2009).

Qualified immunity shields officials from liability for civil damages brought pursuant to section 1983 "so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Bland v. City of Newark, 900 F.3d 77, 83 (3d Cir. 2018) (quoting Mullenix v. Luna, 577 U.S. 7, 11 (2015)). To determine whether an official is entitled to the affirmative defense of qualified immunity for a section 1983 claim, a court must determine (1) whether the official violated a constitutional right and, if so, (2) whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson, 555 U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two Saucier prongs should be addressed first).

A right is clearly established if "every reasonable official would have understood that what he is doing violates that right." Mullenix, 577 U.S. at 11. To be clearly established, there does not have to be a case that is directly on point, "but existing precedent must have placed the statutory or constitutional question beyond debate." Id. (quoting Ashcroft v. Al-Kidd, 563 U.S. 731, 741 (2011)). In determining

whether a right is clearly established, courts must not define the right "at a high level of generality." Id. (quoting Al-Kidd, 563 U.S. at 742). Rather, the analysis should focus on "whether the violative nature of particular conduct is clearly established." Id. On this score, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. It is the plaintiff who bears the initial burden of demonstrating that the constitutional right at issue was clearly established at the time of the claimed violation. See Davis v. Scherer, 468 U.S. 183, 197 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue"); Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir. 1997) ("Where a defendant asserts a qualified immunity defense in a motion for summary judgment, the plaintiff bears the initial burden of showing that the defendant's conduct violated some clearly established statutory or constitutional right").

To determine whether a right is clearly established, the court may look to cases from the Supreme Court, controlling circuit precedent, or "a robust consensus of cases of persuasive authority" from other circuit courts. Porter v. Pa. Dep't of Corrs., 974 F.3d 431, 449 (3d Cir. 2020) (quoting Barna v. Bd. of Sch. Dirs. of Panther

Valley Sch. Dist., 877 F.3d 136, 142 (3d Cir. 2017)). Unpublished cases cannot establish a right because they do not constitute binding authority. El v. City of Pittsburgh, 975 F.3d 327, 340 (3d Cir. 2020). In rare cases, the unlawfulness of a government official's conduct may be established from the obviously unlawful nature of the defendant's conduct "even though existing precedent does not address similar circumstances." D.C. v. Wesby, 583 U.S. 48, 63, 138 S. Ct. 577, 590 (2018) (citing Brosseau v. Haugen, 543 U.S. 194, 199 (2004)).

Given the fact specific nature of the qualified immunity inquiry, it cannot be said that Dean Morrell violated clearly established constitutional precepts when he interviewed Cayenne as part of a school disciplinary investigation without administering Miranda warnings; referred the results of this disciplinary inquiry to law enforcement; or neglected to retain a school bus video depicting some aspects of this incident. As to these allegations, which form the gist of Cayenne's constitutional claims against Morrell, there simply is not robust legal consensus which would have placed Morrell on notice of the wrongfulness of his conduct. Rather, existing case law strongly supported the inference that Morrell navigated an appropriate course in addressing this sexually charged allegation of misconduct. Therefore, Morrell is entitled to assert qualified immunity from liability in this case.

5. **Cayenne's Intentional Infliction of Emotional Distress Claim Fails.**

Finally, in Count VIII of his amended complaint, Cayenne brings a state law intentional infliction of emotional distress (IIED) claim, arising out of Morrell's involvement in these proceedings. With regard to the tort of intentional infliction of emotional distress, under Pennsylvania Law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm." 10 Restatement (Second) of Torts § 46(1) (1965). Our sister court has explained that, to establish a claim for IIED: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." Richardson v. Barbour, No. 2:18-CV-01758-JMG, 2020 WL 4815829, at *14 (E.D. Pa. Aug. 19, 2020). With regard to the level of conduct required, the Pennsylvania Superior Court has noted:

> "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." Buczek v. First National Bank of Mifflintown, 366 Pa.Super. 551, 558, 531 A.2d 1122, 1125 (1987). Described another way, "[i]t has not been enough that the defendant has acted with intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree

27

of aggravation that would entitle the plaintiff to punitive damages for another tort."

Hoy v. Angelone, 554 Pa. 134, 151, 720 A.2d 745, 754 (1998) (quoting Restatement (Second) of Torts § 46, comment d; Daughen v. Fox, 372 Pa.Super. 405, 412, 539 A.2d 858, 861 (1988)).

In addition to alleging outrageous conduct, "a plaintiff must suffer some type of resulting physical harm due to the defendant's outrageous conduct." Reeves v. Middletown Athletic Ass'n, 2004 PA Super 475, ¶ 17, 866 A.2d 1115, 1122–23 (2004) (citing Fewell v. Besner, 444 Pa.Super. 559, 664 A.2d 577, 582 (1995)). On this score, a plaintiff must allege "more than a conclusory recitation of two elements of an emotional distress claim, namely causation and the requisite level of harm." White v. Brommer, 747 F. Supp. 2d 447, 466 (E.D. Pa. 2010).

In the instant case, Cayenne's amended complaint simply does not describe conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Instead, the amended complaint recites that a school official, Dean Morrell, received a report of serious sexual misconduct by Cayenne, investigated that report, learned that Cayenne admitted to sexual contact with the alleged victim while denying that the contact was non-consensual, and referred the

28

results of this disciplinary investigation to law enforcement authorities. Those authorities later charged Cayenne, who actually pleaded guilty to corrupting the morals of a minor, albeit a guilty plea conviction which was later set aside. Nothing about this course of conduct on Morrell's part can be described as beyond all possible bounds of decency, atrocious, or utterly intolerable in a civilized society. Therefore, Cayenne has not met the exacting legal standards necessary for a claim of intentional infliction of emotional distress under Pennsylvania law and this claim also fails.

## IV.   <u>Conclusion</u>

For the foregoing reasons we find that, with respect to Defendant Morrell, Cayenne's amended complaint fails to meet the standards prescribed by law. Therefore, Morrell's motion to dismiss this claim, (Doc. 22), will be granted.

An appropriate order follows.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: August 5th, 2024.