UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSIAH CAYENNE,** | : | CIV NO. 3:23-CV-1543 |
| **Plaintiff,** | : | |
| v. | : | (Magistrate Judge Carlson) |
| **TOBYHANNA TOWNSHIP, et al.,** | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.   Introduction

In this case, which comes before us for consideration of various motions to dismiss, we are called upon to write the latest chapters in a legal saga which has spanned the past five years. This saga arises out of what is alleged to have been a sexually and racially charged episode at a local high school. When this saga began in 2019, the plaintiff, Josiah Cayenne was a student at the Mount Pocono West High School. (Doc. 19, ¶ 3). On May 9, 2019, a fellow student at the high school reported to school officials that Cayenne had sexually assaulted her on a school activity bus.

This reported sexual assault led to an inquiry by school officials. That inquiry, in turn, inspired a referral to local law enforcement who engaged in a criminal investigation. This investigation culminated in the filing of charges

against Cayenne in August of 2019. Following protracted criminal proceedings in July and August of 2021, Cayenne entered a guilty plea to corruption of minors and was sentenced to one year's probation. Cayenne appealed this guilty plea conviction and, in November of 2022, the Pennsylvania Superior Court vacated Cayenne's conviction, setting the stage for the instant lawsuit.

In his amended complaint, Cayenne lodges nine separate claims of false arrest, malicious prosecution, and various federal civil rights violations against two institutional defendants and three individual defendants. (Doc. 19). These defendants have now filed various motions seeking to dismiss Cayenne's complaint. Included among these motions is a motion to dismiss filed by the institutional defendants, Tobyhanna and Coolbaugh Townships, which asserts that Cayenne has failed to allege well-pleaded facts which plausibly state a claim of institutional civil rights liability under federal law. (Doc. 23). This motion is fully briefed and is, therefore, ripe for resolution.

For the reason set forth this motion will be granted.

## II.     **Factual Background and Procedural History**

With respect to these institutional defendants, the well-pleaded facts, which guide our resolution of this motion to dismiss, are set forth in Cayenne's amended

complaint, (Doc. 19), which is the operative pleading in this case.[1] That amended complaint recites the following essential facts:

In 2019, Cayenne was a student at the Mount Pocono West High School. (Doc. 19, ¶ 3). On May 9, 2019, a fellow student at the high school, identified by the pseudonym AA, reported to a school official, Dean Nick Morrell, that Cayenne had sexually assaulted her on a school activity bus the previous day. (Id., ¶¶ 21, 28-37). This report confronted school administrators with allegations of sexual violence which also had a potential racial subtext, since Cayenne was African American and his accuser, AA, was Caucasian.

Upon receiving this allegation, Dean Morrell then questioned Cayenne, who acknowledged that he had engaged in sexual contact with AA but claimed that the incident was consensual. (Id., ¶¶ 21, 22, 28-37). Dean Morrell also viewed the pertinent school bus video which depicted Cayenne sitting next to AA with his arm around her but did not otherwise disclose whether this contact was non-consensual. After viewing this video, Dean Morrell referred this incident to the school public

---

[1] We note that Cayenne has twice moved to further amend his complaint but has done so in a fashion which did not comply with Local Rule 15.1. We have, therefore, denied these motions without prejudice to consideration of a motion which met the strictures of the local rule. To date Cayenne has not submitted a further, rules compliant, motion to amend. Accordingly, in the absence of any such motion, we will treat Cayenne's current amended complaint as the operative pleading in this case.

safety officer, who conducted further investigation and interviews. (Id., ¶¶ 24, 25).

The results of this inquiry were then turned over to Detective John Bohrmann and, in August of 2019, Cayenne was charged with indecent assault and open lewdness. (Id., ¶ 13). Following protracted proceedings in which Cayenne unsuccessfully sought to suppress the statements which he had made to school officials, on July 7, 2021, Cayenne pleaded guilty to corruption of a minor, in return for the dismissal of the remaining charged lodged against him. On August 19, 2021, Cayenne was sentenced to one year's probation following this guilty plea conviction. (Id., ¶¶ 13-15).

Cayenne appealed this conviction, and on November 17, 2022, the Pennsylvania Superior Court set aside his conviction holding that, under Pennsylvania law, one minor could not be convicted of corruption of the morals of another minor of comparable age. (Id., ¶¶ 17-20). Following this appeal, state authorities elected not to pursue any further criminal prosecution in this case.

It is against this backdrop that Cayenne has now filed this civil rights lawsuit. In his amended complaint, Cayenne names three individual defendants: Dean Morrell, Detective Bohrmann, and Detective Bohrmann's supervisor, Chief of Police Chris Wagner. (Id.) Cayenne brings eight counts against these individual defendants, including federal civil rights claims grounded upon allegations of

racially motivated bias, false arrest, and malicious prosecution, as well as state common law torts of fraudulent concealment, false arrest, and intentional infliction of emotional distress. (Id., Counts I-II, and V-IX).

In addition, Cayenne levelled a federal civil rights claim against two institutional defendants: Tobyhanna Township and Coolbaugh Township, the municipalities which employed Detective Bohrmann through the Mount Pocono Regional Police Department. (Id., Count IV).[2] Notably, Cayenne's amended complaint is devoid of any well-pleaded facts describing the active involvement of these institutional defendants in this investigation and prosecution. Instead, as to these institutional defendants, the amended complaint simply alleges that:

> 99. Defendant Chief Wagner was at all times the policymaker for the Township Defendants and Mount Pocono Regional Police Department, and in that capacity established policies, procedures, customs, and or practices for the same.
>
> 100. Defendant Wagner developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were the moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.
>
> 101. Defendants Wagner and the Township Defendants have created

---

[2] Chief Wagner is also named in Count IV in his supervisory capacity and has filed a separate motion to dismiss this amended complaint. We will address this claim through a separate opinion and order.

and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

102. In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

103. The deliberately indifferent training and supervision provided by Defendant Chief Wagner and the Township Defendants resulted a conscious or deliberate choice to follow a course of action from among various alternatives available to the aforementioned Defendants and were the moving forces in the constitutional and federal violations and injuries.

104. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered emotional injury and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

(Doc. 19, ¶¶ 99-104).

These allegations are noteworthy in two respects. First, they are entirely lacking in any well-pleaded factual detail. Thus, Cayenne does not specifically identify any constitutionally deficient custom, policy, or practice. Nor does he explain what shortcomings in police training that were attributable to the township defendants, rose to the level of deliberate indifference and directly caused

Cayenne's injuries. Instead, Cayenne merely recited, albeit in a talismanic fashion, the elements of an institutional liability claim.

With Cayenne's institutional liability claims framed in this fashion, the township defendants have moved to dismiss Count IV of the amended complaint, arguing that Cayenne has failed to adequately allege an institutional civil rights claim under federal law. Upon consideration, we agree and will grant this motion to dismiss.

### III. Discussion

#### A. Motion to Dismiss – Standard of Review

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal, –U.S.–, 129 S. Ct. 1937 (2009),

7

pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has

underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." <u>Id.</u>, at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u>, at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

<u>Id.</u>, at 679.

Thus, following <u>Twombly</u> and <u>Iqbal</u>, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The

> District Court must accept all of the complaint's well-pleaded facts as true but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

As the court of appeals has observed:

> The Supreme Court in Twombly set forth the "plausibility" standard for overcoming a motion to dismiss and refined this approach in Iqbal. The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556, 127 S. Ct. 1955). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint which pleads facts "merely consistent with" a defendant's liability, [ ] "stops short of the line between possibility and plausibility of 'entitlement of relief.' "

Burtch v. Milberg Factors, Inc., 662 F.3d 212, 220-21 (3d Cir. 2011), cert. denied, 132 S. Ct. 1861 (2012).

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 1950. Finally,

> "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal, 129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attached as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a

11

proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure, which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

It is against these legal benchmarks that we assess the sufficiency of the institutional liability claims set forth in this amended complaint.

### B. <u>Guiding Principles—Institutional Liability Claims</u>

As we have noted, case law has defined for us a unique species of institutional civil rights liability, a form of liability which is judged by exacting and precise legal

benchmarks. Specifically:

> In <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) ("<u>Monell</u>"), the Supreme Court held that a municipality may be held liable under 42 U.S.C. § 1983 for a constitutional injury that directly resulted from a municipality's policy, custom, or practice. *Id.* at 695, 98 S.Ct. 2018. Accordingly, a <u>Monell</u> claim seeks to impose municipal liability for a constitutional injury that was causally connected to a municipal policy, custom, or practice. <u>See id.; see also Carreno v. City of Newark</u>, 834 F.Supp.2d 217, 231 (D.N.J.2011).
>
> "Under <u>Monell</u>, a municipality cannot be subjected to liability solely because injuries were inflicted by its agents or employees." <u>Jiminez v. All American Rathskeller, Inc.</u>, 503 F.3d 247, 249 (3d Cir.2007). Instead, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." <u>Id</u>. (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018). It is essential to a <u>Monell</u> claim that there be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation" in order to establish municipal liability. <u>City of Canton v. Harris</u>, 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).
>
> Guided by these threshold principles, the Third Circuit Court of Appeals has explained that there are "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983:"
>
>> The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. Finally, a policy or custom may also exist where the policymaker

<s>13</s>

> has failed to act affirmatively at all, [though] the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

Natale v. Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir.2003) (internal quotation marks and citations omitted). Subsequently, the appeals court provided further guidance regarding the ways in which a government policy or custom may be established:

> We have also observed that a government policy or custom can be established in two ways. See Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir.1990). The plaintiffs may establish a government policy by showing that a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issued an official statement of policy. Pembaur v. City of Cincinnati, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The plaintiffs may establish that a course of conduct constitutes a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" that they operate as law. Monell, 436 U.S. at 690, 98 S.Ct. 2018. In either instance, the plaintiffs have the burden of showing that a government policymaker is responsible by action or acquiescence for the policy or custom. *Andrews,* 895 F.2d at 1480. We have also held that, at a minimum, the government must act with deliberate indifference to the purported constitutional deprivation in order to ground liability. San Filippo v. Bongiovanni, 30 F.3d 424, 445 (3d Cir.1994).

Jiminez, 503 F.3d at 250. In cases where a plaintiff is predicating a Monell claim on an alleged failure to train officers or other employees, the Third Circuit has further explained:

> a municipality's failure to train police officers only gives rise to a constitutional violation when that failure amounts to deliberate indifference to the rights of persons with whom the police come into contact. City of Canton, Ohio v. Harris, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). We have held that a failure to train, discipline or control can only form the basis for section 1983 municipal liability if the plaintiff can show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate. See Bonenberger v. Plymouth Township, 132 F.3d 20, 25 (3d Cir.1997).

Montgomery v. De Simone, 159 F.3d 120, 126–27 (3d Cir.1998). It is "only where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality ... can a city be liable for such a failure under § 1983." Harris, 489 U.S. at 389, 109 S.Ct. 1197. Thus, where Monell claims are based upon an alleged failure to train officers, the municipality's training program must be so inadequate that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy [of the current training] so likely to result in the violation of constitutional rights, that the policy makers of the city can reasonably be said to have been deliberately indifferent to the need." Id. at 390, 109 S.Ct. 1197.

Hunter v. Prisbe, 984 F. Supp. 2d 345, 353–55 (M.D. Pa. 2013).

In addition to these general guiding principles which govern institutional civil rights liability, other special considerations apply in a case such as this which arises out of single incident like the arrest and prosecution of Cayenne. Single incident

15

institutional liability claims are particularly demanding in terms of their pleading and proof.

> Thus, while it is sometimes possible "to establish deliberate indifference based on a single incident[,] this showing is available in a very narrow range of circumstances." Peters v. Cmty. Educ. Ctrs., Inc., No. 11-850, 2014 WL 981557, at *9 (E.D. Pa. Mar. 13, 2014). "To find deliberate indifference from a single-incident violation," the risk of injury must be a "highly predictable consequence" of the municipality's failure to train and supervise its employees. Thomas, 749 F.3d at 225 (quoting Connick, 563 U.S. at 63-64). Thus, "[l]iability in single-incident cases depends on '[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights.' " Id. at 223-24 (quoting Bryan Cnty., 520 U.S. at 409).

Tucker v. Petruzzi, No. 3:17-CV-1848, 2018 WL 3623766, at *7 (M.D. Pa. June 27, 2018), report and recommendation adopted, No. 3:17-CV-1848, 2018 WL 3622772 (M.D. Pa. July 30, 2018).

Accordingly, Cayenne must meet these exacting legal guideposts to sustain his institutional liability claims against Tobyhanna and Coolbaugh Township.

### C.   Cayenne's Institutional Liability Claims Fail as Pleaded.

Judged against these benchmarks, we find that Cayenne's amended complaint fails to state institutional liability claims against the township defendants. At the outset, there are several threshold obstacles to imposing institutional liability upon these two townships.

For example, it is clear from the well-pleaded facts set forth in the amended complaint that the township played no role whatsoever in many of the matters alleged by Cayenne, and many of the actors in this case had absolutely no connection to the townships. Thus, Cayenne complains about the manner in which Dean Morrell conducted the school inquiry into his conduct, but it is undisputed that Morrell was employed by the school district and was not in any sense a township employee. Likewise, to the extent that the gravamen of Cayenne's amended complaint is his allegation of a malicious prosecution by state officials, the decision to prosecute this case, and the manner in which the case was prosecuted, were decisions which rested by law with the district attorney's office, an entirely distinct legal entity whose actions are not controlled or overseen by the townships. Therefore, none of these actions can be attributed to the township defendants.

Aside from these threshold obstacles, Cayenne's institutional liability claims founder upon other, more fundamental, legal grounds. This amended complaint simply does not make sufficient well-pleaded factual allegations which would permit a finding of institutional liability against the township defendants. Thus, Cayenne has failed to specify any constitutionally deficient custom, policy, or practice that can be attributed to the townships. Nor does he identify any particular shortcomings in police training that were attributable to the township defendants,

rose to the level of deliberate indifference, and directly caused Cayenne's injuries. Further, Cayenne has failed to allege sufficient facts to permit a finding of deliberate indifference from a single-incident violation, since he has not alleged facts which plausibly show that the risk of injury was a highly predictable consequence of the townships' failure to train and supervise its employees.

These are fatal flaws since, with respect to these institutional liability claims, in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. Fairly construed, in its current form, the institutional liability claims set forth in Count IV of Cayenne's amended complaint amount to little more than a formulaic recitation of the elements of a cause of action, a form of pleading that, as a matter of law, "will not do." Id.

## IV. Conclusion

For the foregoing reasons we find that Cayenne's amended complaint fails to meet the standards prescribed by law for institutional civil rights liability. Therefore, the townships' motion to dismiss this claim, (Doc. 23), will be granted.

An appropriate order follows.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: August 5th, 2024.