## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOSIAH CAYENNE,** | : | **CIV NO. 3:23-CV-1543** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **TOBYHANNA TOWNSHIP, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

### I.    Introduction

In this case, which comes before us for consideration of various motions to dismiss, we are called upon to write the latest chapters in a legal saga which has spanned the past five years. This saga arises out of what is alleged to have been a sexually and racially charged episode at a local high school. When this saga began in 2019, the plaintiff, Josiah Cayenne was a student at the Mount Pocono West High School. (Doc. 19, ¶ 3). On May 9, 2019, a fellow student at the high school reported to school officials that Cayenne had sexually assaulted her on a school activity bus.

This reported sexual assault led to an inquiry by school officials. That inquiry, in turn, inspired a referral to local law enforcement who engaged in a criminal investigation. This investigation culminated in the filing of charges

1

against Cayenne in August of 2019. Following protracted criminal proceedings in July and August of 2021, Cayenne entered a guilty plea to corruption of minors and was sentenced to one year's probation. Cayenne appealed this guilty plea conviction and, in November of 2022, the Pennsylvania Superior Court vacated Cayenne's conviction, setting the stage for the instant lawsuit.

In his amended complaint, Cayenne lodges nine separate claims of false arrest, malicious prosecution, and various federal civil rights violations against two institutional defendants and three individual defendants. (Doc. 19). These defendants have now filed various motions seeking to dismiss Cayenne's complaint. Included among these motions are two motions to dismiss filed by Detective John Bohrman and his supervisor, Chief Chris Wagner. (Docs. 20, 25). In these motions the individual law enforcement defendants assert that Cayenne has failed to allege well-pleaded facts which plausibly state any civil rights liability claims under federal law. The motions are fully briefed and are, therefore, ripe for resolution.

For the reason set forth below, the motions will be granted, in part, and denied in part, as follows: First, Defendant Wagner's motion to dismiss will be GRANTED. Second, Defendant Bohrman's motion to dismiss will be GRANTED with respect to Cayenne's intentional infliction of emotional distress claim but

DENIED in all other respects. However, we will order Cayenne to submit a more definite statement of his remaining claims against Detective Bohrman within 30 days.

## II.    **Factual Background and Procedural History**

With respect to Defendants Bohrman and Wagner, the well-pleaded facts, which guide our resolution of this motion to dismiss, are set forth in Cayenne's amended complaint, (Doc. 19), which is the operative pleading in this case.[1] That amended complaint recites the following essential facts:

In 2019, Cayenne was a student at the Mount Pocono West High School. (Doc. 19, ¶ 3). On May 9, 2019, a fellow student at the high school, identified by the pseudonym AA, reported to a school official, Dean Nick Morrell, that Cayenne had sexually assaulted her on a school activity bus the previous day. (Id., ¶¶ 21, 28-37). This report confronted school administrators with allegations of sexual violence which also had a potential racial subtext, since Cayenne was African American and his accuser, AA, was Caucasian.

---

[1] We note that Cayenne has twice moved to further amend his complaint but has done so in a fashion which did not comply with Local Rule 15.1. We have, therefore, denied these motions without prejudice to consideration of a motion which met the strictures of the local rule. To date Cayenne has not submitted a further, rules compliant, motion to amend. Accordingly, in the absence of any such motion, we will treat Cayenne's current amended complaint as the operative pleading in this case.

Upon receiving this allegation, Dean Morrell then questioned Cayenne, who acknowledged that he had engaged in sexual contact with AA but claimed that the incident was consensual. (Id., ¶¶ 21, 22, 28-37). Dean Morrell also viewed the pertinent school bus video which depicted Cayenne sitting next to AA with his arm around her but did not otherwise disclose whether this contact was non-consensual. After viewing this video, Dean Morrell referred this incident to the school public safety officer, who conducted further investigation and interviews. (Id., ¶¶ 24, 25).

The results of this inquiry were then turned over to Detective John Bohrman and, in August of 2019, Cayenne was charged with indecent assault and open lewdness. (Id., ¶ 13). Following protracted proceedings in which Cayenne unsuccessfully sought to suppress the statements which he had made to school officials, on July 7, 2021, Cayenne pleaded guilty to corruption of a minor, in return for the dismissal of the remaining charged lodged against him. On August 19, 2021, Cayenne was sentenced to one year's probation following this guilty plea conviction. (Id., ¶¶ 13-15).

Cayenne appealed this conviction, and on November 17, 2022, the Pennsylvania Superior Court set aside his conviction holding that, under Pennsylvania law, one minor could not be convicted of corruption of the morals of another minor of comparable age. (Id., ¶¶ 17-20). Following this appeal, state

authorities elected not to pursue any further criminal prosecution in this case.

It is against this backdrop that Cayenne has now filed this civil rights lawsuit. In his amended complaint, Cayenne names three individual defendants: Dean Morrell, Detective Bohrman, and Detective Bohrman's supervisor, Chief of Police Chris Wagner. (Id.) Cayenne brings eight counts against these individual defendants, including federal civil rights claims against Detective Bohrman grounded upon allegations of racially motivated bias, false arrest, and malicious prosecution, as well as the state common law torts of false arrest, and intentional infliction of emotional distress. (Id., Counts I-III, and VIII-IX). In addition, Cayenne levelled a supervisory federal civil rights claim against Chief Wagner, Detective Bohrman's supervisor at the Mount Pocono Regional Police Department. (Id., Count IV).

Thus, the gravamen of Cayenne's amended complaint is his allegation that he was subjected to a meritless, malicious criminal prosecution and a false arrest by these law enforcement officials. Given the focus of this case on the conduct of police, curiously, the factual narrative in the amended complaint contains virtually no reference to Detective Bohrman or Chief Wagner. (Id., ¶¶ 12-47). This narrative portion of the amended complaint is almost completely devoid of well-pleaded facts relating to these law enforcement defendants. Instead, with respect to

Detective Bohrman, the amended complaint simply alleges, without further factual detail, that:

> Detective Bohrman violated Defendant's Fourth and Fourteenth rights to be free from unreasonable detention, false arrest and false imprisonment without probable cause, when he callously, recklessly, and maliciously arrested Plaintiff for engaging a course of conduct arising the Aggravated Indecent Assault, a first degree felony, when he was privy to a video depicting the alleged incident, which showed that Plaintiff did not sexually assault the minor AA, then willfully and intentionally concealed this exculpatory evidence from the defense.

(Id., ¶ 55).

Likewise, the amended complaint does not allege that Chief Wagner was directly involved in this investigation and prosecution. Rather, the amended complaint simply alleges that:

> 99. Defendant Chief Wagner was at all times the policymaker for the Township Defendants and Mount Pocono Regional Police Department, and in that capacity established policies, procedures, customs, and or practices for the same.
>
> 100. Defendant Wagner developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were the moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a course of action from among various available alternatives.
>
> 101. Defendants Wagner and the Township Defendants have created and tolerated an atmosphere of lawlessness, and have developed and maintained long-standing, department-wide customs, law enforcement related policies, procedures, customs, practices, and/or failed to

properly train and/or supervise its officers in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public.

102. In light of the duties and responsibilities of those police officers that participate in arrests and preparation of police reports on alleged crimes, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional and federal rights such as those described herein that the failure to provide such specialized training and supervision is deliberately indifferent to those rights.

103. The deliberately indifferent training and supervision provided by Defendant Chief Wagner and the Township Defendants resulted a conscious or deliberate choice to follow a course of action from among various alternatives available to the aforementioned Defendants and were the moving forces in the constitutional and federal violations and injuries.

104. As a direct result of Defendants' unlawful conduct, Plaintiff has suffered emotional injury and other damages and losses as described herein entitling him to compensatory and special damages, in amounts to be determined at trial.

(Doc. 19, ¶¶ 99-104).

These allegations are noteworthy in two respects. First, they are entirely lacking in any well-pleaded factual detail. Thus, Cayenne does not specifically identify any constitutionally deficient custom, policy, or practice. Nor does he explain what shortcomings in police training that were attributable to Chief Wagner rose to the level of deliberate indifference and directly caused Cayenne's injuries. Instead, Cayenne merely recited, albeit in a talismanic fashion, the

elements of a supervisory liability claim.

With Cayenne's claims framed in this fashion, the law enforcement defendants have moved to dismiss the amended complaint, arguing that Cayenne has failed to adequately allege a civil rights claim under federal law. Upon consideration, we agree that a number of these claims fail. Therefore, the motions will be granted, in part, and denied in part, as follows: First, Defendant Wagner's motion to dismiss will be GRANTED. Second, Defendant Bohrman's motion to dismiss will be GRANTED with respect to Cayenne's intentional infliction of emotional distress claim but DENIED in all other respects. However, we will order Cayenne to submit a more definite statement of his remaining claims against Detective Bohrman within 30 days.

## III.   <u>Discussion</u>

### A.   <u>Motion to Dismiss – Standard of Review</u>

A motion to dismiss tests the legal sufficiency of a complaint. It is proper for the court to dismiss a complaint in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure only if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). With respect to this benchmark standard for the legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in

federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)], and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u>, –U.S.–, 129 S. Ct. 1937 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox, Rothschild, O'Brien & Frankel, Inc.</u>, 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." <u>Morse v. Lower Merion Sch. Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." <u>Associated Gen. Contractors of Cal. v. California State Council of Carpenters</u>, 459 U.S. 519, 526 (1983). As the Supreme Court held in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007), in order to state a valid cause of action, a plaintiff must provide some factual grounds for relief which

"requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id., at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id., at 679. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id., at 678. Rather, in conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id., at 679.

Thus, following Twombly and Iqbal, a well-pleaded complaint must contain more than mere legal labels and conclusions; it must recite factual allegations

10

sufficient to raise the plaintiff's claimed right to relief beyond the level of mere

speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter <u>Iqbal</u>, when presented with a motion to dismiss for failure to
> state a claim, district courts should conduct a two-part analysis. First,
> the factual and legal elements of a claim should be separated. The
> District Court must accept all of the complaint's well-pleaded facts as
> true but may disregard any legal conclusions. Second, a District Court
> must then determine whether the facts alleged in the complaint are
> sufficient to show that the plaintiff has a "plausible claim for relief."
> In other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an entitlement
> with its facts.

<u>Fowler</u>, 578 F.3d at 210-11.

> As the court of appeals has observed:

> The Supreme Court in <u>Twombly</u> set forth the "plausibility" standard
> for overcoming a motion to dismiss and refined this approach in <u>Iqbal</u>.
> The plausibility standard requires the complaint to allege "enough
> facts to state a claim to relief that is plausible on its face." <u>Twombly</u>,
> 550 U.S. at 570, 127 S. Ct. 1955. A complaint satisfies the plausibility
> standard when the factual pleadings "allow[ ] the court to draw the
> reasonable inference that the defendant is liable for the misconduct
> alleged." <u>Iqbal</u>, 129 S. Ct. at 1949 (citing <u>Twombly</u>, 550 U.S. at 556,
> 127 S. Ct. 1955). This standard requires showing "more than a sheer
> possibility that a defendant has acted unlawfully." <u>Id.</u> A complaint
> which pleads facts "merely consistent with" a defendant's liability, [ ]
> "stops short of the line between possibility and plausibility of
> 'entitlement of relief.' "

<u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 220-21 (3d Cir. 2011), <u>cert. denied</u>,

132 S. Ct. 1861 (2012).

> In practice, consideration of the legal sufficiency of a complaint entails a

three-step analysis:

> First, the court must "tak[e] note of the elements a plaintiff must plead
> to state a claim." Iqbal, 129 S. Ct. at 1947. Second, the court should
> identify allegations that, "because they are no more than conclusions,
> are not entitled to the assumption of truth." Id., at 1950. Finally,
> "where there are well-pleaded factual allegations, a court should
> assume their veracity and then determine whether they plausibly give
> rise to an entitlement for relief."

Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (quoting Iqbal,

129 S. Ct. at 1950).

In considering a motion to dismiss, the court generally relies on the

complaint, attached exhibits, and matters of public record. Sands v. McCormick,

502 F.3d 263, 268 (3d Cir. 2007). The court may also consider "undisputedly

authentic document[s] that a defendant attached as an exhibit to a motion to

dismiss if the plaintiff's claims are based on the [attached] documents." Pension

Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

Moreover, "documents whose contents are alleged in the complaint and whose

authenticity no party questions, but which are not physically attached to the

pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d

548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d

382, 388 (3d Cir. 2002) (holding that "[a]lthough a district court may not consider

matters extraneous to the pleadings, a document integral to or explicitly relied

upon in the complaint may be considered without converting the motion to dismiss in one for summary judgment"). However, the court may not rely on other parts of the record in determining a motion to dismiss, or when determining whether a proposed amended complaint is futile because it fails to state a claim upon which relief may be granted. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure, which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Fed. R. Civ. P. 8.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

It is against these legal benchmarks that we assess the sufficiency of the claims set forth in this amended complaint.

### B.    <u>Guiding Principles—Supervisory Liability Claims</u>

As we have noted, in this case, with respect to Chief Wagner, Cayenne alleges a unique species of civil rights liability, supervisory official liability. Federal civil rights supervisory official liability is judged by exacting and precise legal benchmarks. At the outset, to the extent that Cayenne premises Chief Wagner's liability on some sort of supervisory culpability, it is clear that a claim of a constitutional deprivation cannot be premised merely on the fact that the named defendant was a police supervisor when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. <u>Morse v. Lower Merion School Dist</u>., 132 F.3d 902 (3d Cir. 1997); <u>see also Maine v.Thiboutot</u>, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. <u>Robinson v. City of Pittsburgh</u>, 120 F.3d 1286 (3d Cir. 1997). As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . .  <u>See</u> <u>Monell v. New York City Dept. of Social Servs.</u>, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); <u>see also</u> <u>Dunlop v. Munroe</u>, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a

federal official's liability "will only result from his own neglect in not
properly superintending the discharge" of his subordinates' duties);
Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203
(1888) ("A public officer or agent is not responsible for the
misfeasances or position wrongs, or for the nonfeasances, or
negligences, or omissions of duty, of the subagents or servants or other
persons properly employed by or under him, in the discharge of his
official duties"). Because vicarious liability is inapplicable to Bivens
and § 1983 suits, a plaintiff must plead that each Government-official
defendant, through the official's own individual actions, has violated
the Constitution.

Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009).

Instead, "[t]here are two theories of supervisory liability," one under which
supervisors can be liable if they "established and maintained a policy, practice or
custom which directly caused [the] constitutional harm," and another under which
they can be liable if they "participated in violating plaintiff's rights, directed others
to violate them, or, as the person[s] in charge, had knowledge of and acquiesced in
[their] subordinates' violations." Santiago v. Warminster Twp., 629 F.3d 121, 129
(3d Cir. 2010) (quoting A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372
F.3d 572, 586 (3d Cir.2004)). Further when a supervisory liability claim is premised
upon some constitutionally infirm policy or custom it must be alleged with
supporting factual detail that the policy caused the plaintiff's injury. On this score:

Proximate causation is established where the supervisor gave directions
that the supervisor "knew or should reasonably have known would
cause others to deprive the plaintiff of her constitutional rights."
Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir.1988); see also Snell v.

<u>Tunnell</u>, 920 F.2d 673, 700 (10th Cir.1990). Particularly after <u>Iqbal</u>, the connection between the supervisor's directions and the constitutional deprivation must be sufficient to "demonstrate a 'plausible nexus' or 'affirmative link' between the [directions] and the specific deprivation of constitutional rights at issue." <u>Hedges v. Musco</u>, 204 F.3d 109, 121 (3d Cir.2000) (internal quotation marks and citation omitted). Therefore, to state [a supervisory liability] claim . . . , [a plaintiff] needs to have pled facts plausibly demonstrating that the [supervisors] directed [others] to [act] in a manner that they "knew or should reasonably have known would cause [others] to deprive [the plaintiff] of h[is] constitutional rights." <u>Conner</u>, 847 F.2d at 397.

<u>Santiago</u>, 629 F.3d at 130.

In addition to these general guiding principles which govern supervisory civil rights liability, other special considerations apply in a case such as this which arises out of single incident like the arrest and prosecution of Cayenne. Single incident supervisory liability claims are particularly demanding in terms of their pleading and proof.

To do so, the plaintiff must plead facts that show "deliberate indifference" on the part of these supervisors.

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown</u>, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("Bryan Cnty."). Ordinarily, "[a] pattern of similar constitutional violations by untrained employees" is necessary "to demonstrate deliberate indifference for purposes of failure to train." <u>Connick v. Thompson</u>, ⸺ U.S. ⸺, ⸺, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011). "Without notice that a course of training is

16

deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." <u>Id</u>.

Thomas v. Cumberland Cty., 749 F.3d 217, 223 (3d Cir. 2014). Single incident supervisory liability for failure to train subordinates exists only when the training failure is:

"so obvious" that a failure to provide such training could provide a basis for single-incident municipal liability. <u>Id</u>. Liability in single-incident cases depends on "[t]he likelihood that the situation will recur and the predictability that an officer lacking specific tools to handle that situation will violate citizens' rights." <u>Bryan Cnty</u>., 520 U.S. at 409, 117 S.Ct. 1382.

Thomas, 749 F.3d at 223–24.

Boucher v. Lupacchini, No. 3:19-CV-2106, 2021 WL 11096471, at *8–9 (M.D. Pa. Mar. 1, 2021), report and recommendation adopted, No. CV 3:19-2106, 2022 WL 19795967 (M.D. Pa. Apr. 14, 2022).

Accordingly, Cayenne must meet these exacting legal guideposts to sustain his supervisory liability claims against Chief Wagner.

## C.   Cayenne's Supervisory Liability Claim Against Chief Wagner Fails.

Judged against these benchmarks, we find that Cayenne's amended complaint fails to state supervisory liability claim against Chief Wagner. This amended complaint simply does not make sufficient well-pleaded factual allegations which

would permit a finding of supervisory liability. Thus, Cayenne has failed to specify any constitutionally deficient custom, policy, or practice that can be attributed to Chief Wagner. Nor does he identify any particular shortcomings in police training that were attributable to Chief Wagner, rose to the level of deliberate indifference, and directly caused Cayenne's injuries. Further, Cayenne has failed to allege sufficient facts to permit a finding of deliberate indifference from a single-incident violation, since he has not alleged facts which plausibly show that the risk of injury was a highly predictable consequence of the failure to train and supervise Detective Bohrman.

These are fatal flaws since a plaintiff must provide some factual grounds for any supervisory liability claim, which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. Fairly construed, in its current form, the supervisory liability claim against Chief Wagner set forth in Count IV of Cayenne's amended complaint amounts to little more than a formulaic recitation of the elements of a cause of action, a form of pleading that, as a matter of law, "will not do." Id. Therefore, Chief Wagner's motion to dismiss should be granted.

**D.** **Defendant Bohrman's Motion to Dismiss Should Be Granted, in Part and Denied, in Part.**

Finally, with respect to Defendant Bohrman, the police officer who conducted the investigation into Cayenne's conduct, we find that the amended complaint alleges false arrest and malicious prosecution claims in a singularly spare fashion, simply asserting that:

> Detective Bohrman violated Defendant's Fourth and Fourteenth rights to be free from unreasonable detention, false arrest and false imprisonment without probable cause, when he callously, recklessly, and maliciously arrested Plaintiff for engaging a course of conduct arising the Aggravated Indecent Assault, a first degree felony, when he was privy to a video depicting the alleged incident, which showed that Plaintiff did not sexually assault the minor AA, then willfully and intentionally concealed this exculpatory evidence from the defense.

(Id., ¶ 55).

While we believe that this cursory style of pleading demands a more fulsome factual recital and will direct that the plaintiff provide a more definite statement of his claim against this defendant, we are cognizant that there is a significant factual component to any analysis of false arrest and malicious prosecution claims.

**1.** **Cayenne's False Arrest and Malicious Prosecution Claims Against Detective Bohrman Cannot be Addressed on the Current Spare Record.**

These claims of false arrest and malicious prosecution implicate Cayenne's

rights under the Fourth Amendment to the United States Constitution, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and now Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. Under the Fourth Amendment, an arrest without probable cause is a constitutional violation that may be redressed under § 1983. See Walmsley v. Philadelphia, 872 F.2d 546, 551 (3d Cir. 1989) (citing Patzig v. O'Neill, 577 F.2d 841, 848 (3d Cir. 1978)). To bring a claim for false arrest, a plaintiff must establish: "(1) that there was an arrest; and (2) that the arrest was made without probable cause." Harvard v. Cesnalis, 973 F.3d 190, 199 (3d Cir. 2020) (quoting James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012)). Furthermore, to succeed in a § 1983 action for false arrest made pursuant to a warrant, a plaintiff must show, by a preponderance of the evidence: (1) "that the officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant'; and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" Meyers v.  Wolkiewicz, 50 F. App'x 549, 552 (3d Cir. 2002) (quoting Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir. 2000)).

Similarly, in order to state a claim for malicious prosecution under § 1983, a claimant must show that:

> [The] defendant commenced a criminal proceeding; (2) the proceeding terminated in plaintiff's favor; (3) defendant "initiated the proceeding without probable cause"; (4) defendant acted maliciously or with a purpose apart from bringing plaintiff to justice; and (5) plaintiff "suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding."

Watson v. Witmer, 183 F.Supp.3d 607, 612-13 (M.D. Pa. 2016) (quoting Johnson v. Knorr, 477 F.3d 75, 81-82 (3d Cir. 2007)).[2]  We note that, in a case where a claim of malicious prosecution is brought against a police officer:

> Police officers (as opposed to prosecutors) may be liable for malicious prosecution if they "conceal or misrepresent material facts" to the prosecutor. Halsey, 750 F.3d at 297 (quoting Pierce v. Gilchrist, 359 F.3d 1279, 1292 (10th Cir. 2004)). In particular, an officer is liable if he "fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute."

Thomas v. City of Phila., 290 F.Supp.3d 371, 379 (E.D. Pa. 2018) (quoting Finnemen v. SEPTA, 267 F.Supp.3d 639 (E.D. Pa. 2017)).

Further, whether cast as a false arrest, or malicious prosecution, proof that probable cause was lacking is essential to any § 1983 claim arising out of the arrest

---

[2] The elements of a common law malicious prosecution claim in Pennsylvania are identical to a § 1983 claim. See Cosmas v. Bloomingdales Bros., Inc., 660 A.2d 83, 85 (Pa. Super. Ct. 1995).

and prosecution of an individual. For purposes of the Fourth Amendment, probable cause to arrest exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002). Thus, the probable cause determination which is typically pivotal to any false arrest claim is often highly fact dependent and fact driven. In fact, the existence of probable cause for an arrest is typically a question of fact for a jury, unless the evidence "reasonably would not support a contrary factual finding," in which case the court may determine the existence of probable cause as a matter of law. Basile v. Twp. of Smith, 752 F.Supp.2d 643, 651 (W.D. Pa. 2010).

Liberally construed, in his amended complaint, Cayenne has alleged that Detective Bohrman included material facts in his affidavit which he knew to be untrue and excluded exculpatory evidence that would have contributed to the

determination of probable cause. In our view, at this stage where we must view the facts alleged in a light favorable to plaintiff, Cayenne has alleged barely enough facts at this stage to support the inference that his arrest was made without probable cause, and accordingly, that the criminal proceedings against him arising out of that arrest were initiated without probable cause. With our discretion cabined and confined to the complaint itself, it would be inappropriate to dismiss his claims at this early stage in the proceedings.[3] Instead, the legal sufficiency of these claims must await another day and another motion in the nature of a summary judgment motion where we may consider matters outside the pleadings.

### 2.   Cayenne's Intentional Infliction of Emotional Distress Claim Fails.

In Count VIII of his amended complaint, Cayenne brings a state law intentional infliction of emotional distress (IIED) claim, arising out of Bohrman's involvement in these criminal proceedings. With regard to the tort of intentional infliction of emotional distress, under Pennsylvania Law, "[o]ne who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the

---

[3] We further note that these torts typically require some degree of actual pretrial confinement, something that Cayenne needs to articulate in a more fulsome fashion. See DiBella v. Borough of Beachwood, 407 F.3d 599, 603 (3d Cir. 2005).

other results from it, for such bodily harm." 10 Restatement (Second) of Torts §

46(1) (1965). Our sister court has explained that, to establish a claim for IIED: "(1)

the conduct must be extreme and outrageous; (2) the conduct must be intentional or

reckless; (3) it must cause emotional distress; and (4) the distress must be severe."

Richardson v. Barbour, No. 2:18-CV-01758-JMG, 2020 WL 4815829, at *14 (E.D.

Pa. Aug. 19, 2020). With regard to the level and severity of the conduct alleged, the

Pennsylvania Superior Court has noted:

> "The conduct must be so outrageous in character, and so extreme in
> degree, as to go beyond all possible bounds of decency, and to be
> regarded as atrocious, and utterly intolerable in a civilized society."
> Buczek v. First National Bank of Mifflintown, 366 Pa.Super. 551, 558,
> 531 A.2d 1122, 1125 (1987). Described another way, "[i]t has not
> been enough that the defendant has acted with intent which is tortious
> or even criminal, or that he has intended to inflict emotional distress,
> or even that his conduct has been characterized by 'malice,' or a
> degree of aggravation that would entitle the plaintiff to punitive
> damages for another tort."

Hoy v. Angelone, 554 Pa. 134, 151, 720 A.2d 745, 754 (1998) (quoting Restatement

(Second) of Torts § 46, comment d; Daughen v. Fox, 372 Pa.Super. 405, 412, 539

A.2d 858, 861 (1988)).

In addition to alleging outrageous conduct, "a plaintiff must suffer some type

of resulting physical harm due to the defendant's outrageous conduct." Reeves v.

Middletown Athletic Ass'n, 2004 PA Super 475, ¶ 17, 866 A.2d 1115, 1122–23

(2004) (citing Fewell v. Besner, 444 Pa.Super. 559, 664 A.2d 577, 582 (1995)). On

24

this score, a plaintiff must allege "more than a conclusory recitation of two elements of an emotional distress claim, namely causation and the requisite level of harm." White v. Brommer, 747 F. Supp. 2d 447, 466 (E.D. Pa. 2010).

In the instant case, while Cayenne's amended complaint may colorably state other claims at this juncture, it simply does not describe conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society. Instead, the amended complaint recites that a school official received a report of serious sexual misconduct by Cayenne, investigated that report, learned that Cayenne admitted to sexual contact with the alleged victim while denying that the contact was non-consensual, and referred the results of this disciplinary investigation to law enforcement authorities. Following an investigation by Detective Bohrman, those authorities later charged Cayenne, who actually pleaded guilty to corrupting the morals of a minor, albeit a guilty plea conviction which was later set aside. Nothing about this course of conduct can be described as beyond all possible bounds of decency, atrocious, or utterly intolerable in a civilized society. Therefore, Cayenne has not met the exacting legal standards necessary for a claim of intentional infliction of emotional distress under Pennsylvania law and this claim also fails.

**3.** **Cayenne Must Provide a More Definite Statement of his False Arrest and Malicious Prosecution Claims Against Detective Bohrman.**

While we regard dismissal of Cayenne's false arrest and malicious prosecution claims to be premature and inappropriate at this juncture, we recognize that there is a somewhat enigmatic quality to these claims as they are currently pleaded. Presented with these obstacles to a fully informed understanding of the plaintiff's claims against Detective Bohrman, we note that, when a plaintiff's complaint is unclear, the court may, *sua sponte*, order the plaintiff to file a more definite statement pursuant to Rule 12(e) of the Federal Rules of Civil Procedure in order to clarify the plaintiff's claims. See, e.g., Kyeame v. Buchheit, No. 1:07-CV-1239, 2011 WL 3651369, at *1 (M.D. Pa. Aug. 18, 2011); MFS, Inc. v. Twp. of South Annville, No. 1:05–CV–1371, 2006 WL 3254535, at *7 (M.D. Pa. Nov. 9, 2006); see also Moore's Federal Practice, § 12.36 (Matthew Bender 3d ed.) ("Because of its potential usefulness ... courts will occasionally order a more definite statement *sua sponte*, which they have the freedom to do"); Fikes v. City of Daphne, 79 F.3d 1079, 1082–83 (11th Cir. 1996) (finding that a more definite statement can tighten a complaint and clarify which of several possible claims are being asserted).

In a case such as this, where the plaintiff's false arrest and malicious prosecution claims against Detective Bohrman may not be clearly and thoroughly

articulated, Rule 12(e) of the Federal Rules of Civil Procedure provides, in part, that the court may order a party to prepare: "a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Further, under this rule "[i]f the court orders a more definite statement, and the order is not obeyed within 14 days after notice of the order or within the time the court sets, the court may strike the pleading or issue any other appropriate order." Fed. R. Civ. P., Rule 12(e).

Here, we find that this particular complaint aptly:

> highlight[s] the particular usefulness of the Rule 12(e) motion for a more definite statement. Under Rule 12(e), [the court may order] a more definite statement "[i]f a pleading ... is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Fed.R.Civ.P. 12(e).... When a complaint fashioned under a notice pleading standard does not disclose the facts underlying a plaintiff's claim for relief, the defendant cannot reasonably be expected to frame a proper, fact-specific ... defense....
>
> The Rule 12(e) motion for a more definite statement is perhaps the best procedural tool available to the defendant to obtain the factual basis underlying a plaintiff's claim for relief.

Thomas v. Independence Tp., 463 F.3d 285, 301 (3d Cir. 2006)

Given some of the legal and factual ambiguities of the plaintiff's false arrest and malicious prosecution claims against Defendant Bohrman, the plaintiff will be directed, pursuant to Rule 12(e), to submit a more definite statement of these claims in the form of an amended complaint. At a minimum, this more definite statement

should: (1) identify what form of confinement, if any, Cayenne experienced during this state criminal case; (2) provide further well-pleaded facts concerning Detective Bohrman's involvement in this investigation, including the alleged suppression of exculpatory evidence; and (3) set forth further well-pleaded facts supporting the allegation that Detective Bohrman lacked probable cause at the time he initiated these proceedings.

## IV.   <u>Conclusion</u>

For the foregoing reasons Defendants Bohrman's and Wagner's motions to dismiss this claim, (Docs. 20, 25), will be granted, in part, and denied in part, as follows:

First, Defendant Wagner's motion to dismiss is GRANTED.

Second, Defendant Bohrman's motion to dismiss is GRANTED with respect to Cayenne's intentional infliction of emotional distress claim but DENIED in all other respects.

However, IT IS ORDERED that Cayenne submit a more definite statement of his remaining claims against Detective Bohrman within 30 days.

An appropriate order follows.

<u>S/Martin C. Carlson</u><br>Martin C. Carlson<br>United States Magistrate Judge

DATED: August 6, 2024.